**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**


**CRISTIN C. FOSBERG,**                                                     **PLAINTIFF**


**vs.**                                               **CIVIL ACTION NO. 1:14-CV-134-SAA**


**COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**


**MEMORANDUM OPINION**

Plaintiff Cristin C. Fosberg has applied for judicial review under 42 U.S.C. § 405(g) of

the Commissioner of Social Security's decision denying her application for a period of disability

(POD) and disability insurance benefits (DIB) under Title II of the Social Security Act.  Docket

9.  Plaintiff filed an application for DIB on August 31, 2012, alleging disability beginning June 9,

2012.  Docket 9, p. 165-66.  The agency administratively denied her application initially and

upon reconsideration.  Docket 9, pp. 106, 113-16.  She then requested a hearing, which an

Administrative Law Judge ("ALJ") conducted on March 11, 2014.  Docket 9, p. 49-79.  The ALJ

issued an unfavorable decision on April 25, 2014 (Docket 9, p. 26-48), and the Appeals Council

denied plaintiff's request for a review on July 7, 2014, Docket 9, p. 7-9.  Plaintiff timely filed the

instant appeal from the decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all proceedings

in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this

opinion and the accompanying final judgment.

**I.  FACTS**

Plaintiff, currently 31 years old, was born September 7, 1983. Docket 9, p. 56. She completed high school and one semester of college. Docket 9, p. 57. She was previously employed as a receptionist, a secretary, a day care worker, and various other clerk-type positions including an accounting clerk. Docket 9, p. 77, 189. Plaintiff contends that she is unable to work due to diverticulitis, depression, endometriosis, pseudoseizures, interstitial cystitis, hypothyroidism, and migraine headaches. Docket 9, p. 109.

In evaluating plaintiff's disability claim, the ALJ proceeded through the Social Security Administration's five-step sequential evaluation process. 20 C.F.R. 404.1520(a); *see also* Docket 9, p. 29-41. The ALJ determined that plaintiff suffered from "severe" impairments of "migraines, pseudoseizures, cystitis, diverticulitis and gastrointestinal disorders, depression and mood disorders, and anxiety-related disorders" (Docket 9, p. 31) but ultimately found that her impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). Docket 9, p. 32.

Based upon testimony by a vocational expert ("VE") at the hearing and after considering the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity ("RFC") to, "lift, carry, push, or pull 20 lbs. occasionally and 10 lbs. frequently and to stand, sit, or walk for 6 hours of an 8-hour workday [and] can have occasional interaction with the public." Docket 9, p. 34. Upon further analysis under applicable rulings and regulations, the ALJ determined that the plaintiff was less than fully credible in describing the intensity, persistence and limiting effects of her claimed symptoms, limitations and subjective complaints. Docket 9, p. 36-40. In reaching his ultimate conclusion, the ALJ evaluated all of the evidence in the record, including hearing testimony from both the plaintiff and the VE, and held that plaintiff could

perform her previous job as an accounting clerk.  Docket 9, p. 40.  As a result, the ALJ

concluded that plaintiff is not disabled under the Social Security Act.  Docket 9, p. 40-41.

On appeal, the plaintiff argues the ALJ erred in two ways: (i) by substituting his own

opinion for that of medical professionals in determining the severity of plaintiff's various

impairments, and (ii) by failing to accord proper weight to a consulting physician's opinion,

which then led to an improper assessment of plaintiff's RFC.  Docket 13.

## II.  EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step

sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  The burden to prove disability rests

upon plaintiff throughout the first four steps of this process, and if plaintiff is successful in

sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner

at step five.  *See Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).  First, the plaintiff must

prove she is not currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).

Second, the plaintiff must prove her impairment(s) are "severe" in that they "significantly limit[]

[her] physical or mental ability to do basic work activities . . .."  20 C.F.R. § 404.1520(c).  At

step three the ALJ must conclude that the plaintiff is disabled if she proves that her impairments

meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart

P, App. 1, §§ 1.00-114.09 (2010).  20 C.F.R. § 404.1520(d).  If the plaintiff does not meet this

burden, at step four she must prove she is incapable of meeting the physical and mental demands

of her past relevant work.  20 C.F.R. § 404.1520(e).  Finally, at step five, the burden shifts to the

Commissioner to prove, considering plaintiff's residual functional capacity, age, education and

past work experience, that she is capable of performing other work.  20 C.F.R § 404.1520(g).  If

the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

## III. STANDARD OF REVIEW

On appeal the court must consider whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were used. *Crowley*, 197 F.3d at 196, citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). In making that determination, the court has the responsibility to scrutinize the entire record. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence leans against the Commissioner's decision. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *see also Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley*, 197 F.3d at 197 (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's conclusions. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crowley*, 197 F.3d at 197. "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed."

*Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson*, 402 U.S. at 390.

## IV.  DISCUSSION

The plaintiff asserts that the ALJ erred in two ways:  (i) by substituting his own opinion for that of medical professionals in determining the severity of plaintiff's various impairments and (ii) by failing to accord proper weight to a consulting physician's opinion, which then led to an improper assessment of plaintiff's RFC.  Docket 13.  The court holds that the ALJ decision was substantially justified and applied the proper legal standards.

### A. Whether the ALJ properly considered plaintiff's impairments

The plaintiff asserts that errors made by the ALJ at step two in the evaluation process caused the remainder of the sequential evaluation process to be defective and unsupported by substantial evidence.  Docket 13, p. 4-11.  More specifically, the plaintiff contends the ALJ wrongly substituted his own opinion for that of medical professionals in determining the severity of the plaintiff's medical impairments.  Docket 13, 4-11.  After an exhaustive and thorough review of the entire record, which includes approximately 1,500 pages of medical records, it is clear the ALJ did not err in reaching the ultimate disability determination.

The ALJ thoroughly considered the plaintiff's case as he worked through the sequential evaluation process.  After determining the plaintiff suffered from several severe impairments, the ALJ found that these impairments did not meet or medically equal a listing.  Docket 9, p. 29-41.  He then found that, based upon her RFC, the plaintiff could return to previous work she had performed.  Docket 9, p. 29-41.  In making this determination, the ALJ thoroughly analyzed the plaintiff's many claimed impairments in light of her subjective testimony and the entirety of the medical treatment evidence provided in the record.  Docket 9, p. 29-41.  Based upon that

examination of the evidence, the ALJ found that the claimant's statements concerning the intensity, persistence and limiting effects of the plaintiff's symptoms were not entirely credible. Docket 9, p. 36-40.

The Fifth Circuit has routinely held that the ALJ is in the best position to assess a claimant's credibility. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *see also Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983); *see also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Here, the ALJ relied on inconsistencies peppered throughout the medical records to substantiate his credibility determination. Docket 9, pp. 36-40. These inconsistencies highlight that the authenticity of the plaintiff's subjective allegations of pain as well as the severity of her impairments have often been questioned by medical professionals throughout her medical history. Docket 9, p. 36-40.

For example, the ALJ noted in his opinion an instance where the claimant had undergone 24-hour video electroencephalogram (EEG) monitoring. Docket 9, p. 36 (Exhibit 2F). During that monitoring, the plaintiff exhibited two "spells," or seizure-like incidents. However, doctors noted in the plaintiff's records that in neither incident did any concurrent electrographic changes occur. Docket 9, p. 36 (citing Exhibit 2F). Although the plaintiff challenges the ALJ's reliance upon this fact to substantiate a lack of credibility, this example is hardly the only evidence upon which the ALJ relied to make his determination, nor is it the only medical evidence that exhibited inconsistencies. In fact, the medical records are replete with evidence of situations where medical professionals questioned the plaintiff's credibility or reliability because objective medical test results revealed nothing abnormal despite the plaintiff's claims otherwise. Docket 9, p. 36 (citing Exhibits 12F, 14F, 18F, 19F, 39F, 40F, 42 F, and 44F).

6

The ALJ also found the plaintiff exhibited a "tendency to misrepresent her symptoms or make statements that lack in veracity." Docket 9, p. 36-37. The ALJ noted instances from the records when treating doctors observed the claimant "faking anaphylactic reactions" (Docket 9, Exhibit 1F), having episodes of respiratory distress during which her "oxygen saturation levels remain[ed] at 100 percent during" the event (Docket 9, Exhibit 3F), and making untrue statements to physicians about other doctors referring her to the emergency room when they had not actually done so and then demanding to be admitted to the hospital, Docket 9, Exhibit 22F.

Although the plaintiff seems to rely on the substantial volume of medical records in this case as facial proof of disability, the ALJ instead found that a full and comprehensive analysis of these medical records actually detracted from plaintiff's credibility. Docket 9, p. 37. The ALJ found that those records highlighted the possibility that the claimant has consistently been exhibiting drug-seeking behavior rather than suffering from an actual disability. Docket 9, p. 37. To substantiate this observation, the ALJ relied on the voluminous medical record to confirm that medical professionals throughout the claimant's treatment history have questioned her credibility and documented their suspicions of her behavior. Docket 9, p. 37. For example, the ALJ noted an instance when the plaintiff became verbally "discontent" and "almost argumentative" with medical professionals after she was told no pain medications would be administered to her pending a laboratory testing. Docket 9, p. 37 (citing Exhibit 30F). In another instance, the ALJ looked to Dr. Stephen Smith's treatment notes from September 23, 2013. Docket 9, p. 37 (citing Exhibit 44F). There, Dr. Smith noted,

> [d]uring our discussion, the patient began indicating she was hurting severely, grimacing, and even started coughing into a basin without any significant vomitus produced. Prior to coming into the room, the

> patient had been observed for several minutes without any
> appreciable appearance of anxiety or discomfort with the patient
> returning to that upon leaving the room and being visited by other
> individuals.

Docket 9, p. 1686. Going further, Dr. Smith noted in the claimant's treatment plan that he was,

"quite concerned with her extreme desire to receive pain medications IV [intravenously]," and

that the "patient seems quite happy to be in the sick role at this time with significant attention

paid to her . . .." Docket 9, p. 1688-89.

The plaintiff's claim that the ALJ substituted his own opinion for that of medical

professionals in making his determination is unsubstantiated by the evidence. Upon review, the

court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a

reasonable mind to accept the ALJ's conclusions. *See Richardson v. Perales*, 402 U.S. 389, 401

(1971); *see also Crowley*, 197 F.3d at 197. In doing that here, the court has scrutinized the entire

record, including approximately 1,500 pages of plaintiff's medical records. Performance of that

review, however, rather than revealing ALJ error, revealed that the evidence the ALJ relied

merely scratched the surface of the evidence that any reasonable person may have relied on in

reaching the same ultimate determination. In fact, while the ALJ noted only a few instances in

his analysis, there are many, many instances in which the plaintiff sought, or even often

demanded, very particular and specific pain medications. *See, e.g.*, Docket 9, p. 938-39, 1097,

1099, 1195, 1225, 1246, 1408, 1498, 1521, 1677, 1688-89, 1717-18, 1745, 1748, 1775, 1800.

Those records also reveal that there were numerous instances where medical professionals

questioned the authenticity of the plaintiff's claims.[1]  And, finally, there were even instances

where the plaintiff appeared to have been seeking out surgical treatment or demanded she be

admitted to the hospital.[2]

The court sympathizes with the burden of possibly addictive behaviors, but the fact

remains that the ALJ was substantially justified in reaching his conclusion that the plaintiff was

less than credible in her claims.  Because the record, as a whole, provides sufficient evidence that

would allow a reasonable mind to accept the ALJ's conclusions, the court concludes that the ALJ

applied the proper legal standards, and his decision was substantially justified.

### B. Whether the ALJ erred in assessing plaintiff's residual functional capacity

---

[1]  *See* Docket 9, p. 454 ("She has also faked anti phylactic reactions and I have witnessed her faking stridor in the past.), 496 (Documentation of faking respiratory distress.), 856 (Among questioned seizures, "has falsified wheezing previously while in the hospital."), 1285 (Notes contradictory subjective statements to medical professionals), 1292 ("I am certain this is again histrionics and not real pathology but she shows up in ER frequently and I can usually calm her down with admission for a couple of days."), 1397 (". . . unlik[e]ly to have an an[a]tomical or physiological cause of her pain."), 1408 ([patient] should not be admitted unless an objective reason can be found."), ("[patient] had previous visit with morphine as an allergy, denies allergy this visit. [Patient] states she has previously taken morphine without problems."), 1657 ("[Patient] makes eye contact when nurse question was she alright, then continues to grunt and move legs up and down."), 1677 ("She was essentially extremely focused on receiving intravenous opiate medications insisting that nothing else helps.  She apparently goes to the Emergency Department regularly to get injections . . .. Earlier in the course of her stay she did receive intravenous opiates but that was discontinued. . .. That became an issue during the course of her stay. When observed she appears in no distress, but occasionally one gets in the room she professes extreme pain that can only be relieved by intravenous opiates. . .. She did not seem to be having any significant migraine problems at the time of her stay. . .. She was conversant with her family and friends, and watching television, occasionally on the phone, using some hand held devices at the time that she was stating these migraines were absolutely unbearable."), 1682 ("Severe, recurrent and intractable abdominal pain of questionable etiology. . .. After further discussion with the family it seems rather firm that the patient has had seizures rule[d] out with inpatient monitoring in Meridian."), 1684 ("The etiology of this is unclear but given her other psychiatric/neuro issues I suspect this is all functional and further workup is likely to be unrevealing."), 1686 ("Prior to coming into the room, the patient had been observed for several minutes without any appreciable appearance of anxiety or discomfort with patient returning to that upon leaving the room and being visited by other individuals.").

[2]  *See* Docket 9, p. 837 (patient requested repeat laparoscopy), 888 ("The patient desires surgery."), 894 ("She desired hysterectomy."), 935 ("Pt. Has had 11 ER visit[s] from 6-4-12 to 8-13-12."), 1018 ("She now desires definitive surgery."), 1096 ("She came to the emergency room here stating that our office told her to come to the emergency room and told her that I would admit her, which was not true.  She was given multiple medications by the emergency room physician here and when attempting to discharge her, she refused to go home and demanded to be admitted."), 1292 ("I am certain this is again histrionics . . .. She insists on being admitted.").

The plaintiff also claims the ALJ erroneously assessed plaintiff's RFC because he did not afford the proper weight to the opinion of DDS consultative physician, Dr. James Lane, in formulating the RFC. Docket 13, p. 11-16. Upon review, the ALJ's RFC determination is "granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *see also* 42 U.S.C.A. § 405(g). Because the court finds that the Commissioner's decision was substantially justified, the court holds that the ALJ properly weighed Dr. Lane's opinion based on the evidence in the record.

Dr. Lane performed a consultative psychological examination at the request of DDS on October 19, 2012. Docket 9, pp. 1182-1187. The plaintiff argues that the ALJ improperly weighed Dr. Lane's medical opinion in reaching his ultimate RFC determination because he found Dr. Lane's opinion inconsistent with the evidence, including the doctor's own evaluation. Docket 13, pp. 15-16 (citing Docket 9, p. 39).

Upon review, the court finds the ALJ's RFC determination to be consistent with the evidence of record and the proper legal standards. Contrary to the plaintiff's assertion, the ALJ acknowledged the plaintiff's severe impairments, including her mental impairments, in his RFC determination. Ultimately however, the ALJ determined that plaintiff had the RFC "to lift, carry, push, or pull 20 lbs. occasionally and 10 lbs. frequently and to stand, sit, or walk for 6 hours of an 8-hour workday [and] also have occasional interaction with the public" despite those impairments. Docket 9, pp. 34-40. The ALJ did not reach this decision unilaterally or without medical evidence.

Social Security Ruling 96-7p required the ALJ to make a credibility determination in this case.[3] When making assessing credibility, an ALJ must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p(4). In opting to give Dr. Lane's opinion limited weight, the ALJ explained that Dr. Lane's report had internal inconsistencies and contained equivocal statements in multiple areas, rendering it insufficiently specific to establish plaintiff's capabilities. Docket 9, p. 39.

The ALJ fulfilled his obligation to weigh all of the evidence from the record to make a credibility determination, as required under SSR 96-7p. To find that the plaintiff's claims lacked credibility, the ALJ relied on inconsistency in her testimony as well as the opinions of other qualified medical professionals as was discussed in the previous section of this Memorandum Opinion. Docket 9, pp. 34-40. Many of those medical professionals, several of which had incredibly extensive treatment relationships with the plaintiff due to her near-constant treatment seeking, had determined that the plaintiff had a tendency to misrepresent or altogether falsify her symptoms as well as exhibit drug-seeking behavior. Docket 9, pp. 34-40.

## V. CONCLUSION

Reading the record as a whole, the court concludes that the ALJ's opinion is supported by

---

[3] SSR 96-7p, "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."

substantial evidence and upheld the proper legal standards.  It is clear the ALJ extensively reviewed the entire record, properly identified the relevant listed impairments, fully discussed the evidence that was contained in the record and properly concluded that the plaintiff's clams lacked credibility and that she could return to past relevant work.  The Commissioner's decision is affirmed.  A final judgment in accordance with this memorandum opinion will issue this date.

This the 11th day of May, 2015.

 /s/ S. Allan Alexander                          
UNITED STATES MAGISTRATE JUDGE